ORIGINAL

FILED
U.S. DISTRICT COURT

2008 DEC -9 AM 8: 34

[signature]
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JOSE AGUERO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 308-033 |
| | ) | (Formerly CR 305-021) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government submitted its response to the motion. On November 17, 2008, the Court held an evidentiary hearing, at which time Petitioner, his wife, his sister, his brother-in-law and his former counsel, Morris S. Robertson, offered testimony. For the reasons discussed more fully below, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **GRANTED**, that the judgment in Petitioner's underlying criminal case be **VACATED**, that an identical sentence be **RE-IMPOSED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Petitioner.

### I. BACKGROUND

**A.  Procedural History**

On February 8, 2006, Petitioner was indicted by a federal grand jury on one count of conspiracy to possess with intent to distribute and to distribute fifty (50) grams or more of

methamphetamine, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). United States v. Aguero, CR 305-021, doc. no. 28 (S.D. Ga. Feb. 8, 2006). Petitioner was represented by appointed counsel, Morris S. Robertson, and on February 1, 2007, Petitioner entered a plea of guilty to the conspiracy charge pursuant to a negotiated plea agreement. Id., doc. nos. 98-100. On June 18, 2007, the Honorable Dudley H. Bowen, Jr., United States District Judge, sentenced Petitioner to 108 months of imprisonment and 5 years of supervised release. Id., doc. no. 110. Judge Bowen also imposed a $5,000 fine and $100 in special assessments. Id. Petitioner did not appeal.

Petitioner timely filed his § 2255 motion in which he contends that counsel was ineffective (1) for failing to file a notice of appeal despite Petitioner's request that counsel do so and (2) for failing to consult with him as to whether an appeal should be filed. (Doc. no. 1, pp. 4, 7-8). The government denied both allegations in its response. (Doc. no. 3, p. 4). In order to resolve these factual issues, the Court held an evidentiary hearing on November 17, 2008. Petitioner was represented at the hearing by appointed counsel, Daniel M. King, Jr.

**B.     Evidentiary Hearing**

**1.     Petitioner's Case**

At the evidentiary hearing, Petitioner testified that he was surprised by the 108-month sentence imposed because he felt that it was harsher than the sentence imposed on his other

co-defendants.[1] Petitioner testified that after the sentence was imposed, he asked his attorney, Mr. Robertson, if he could file an appeal. He testified that Mr. Robertson told him "there was nothing else that we could do." He went on to state that at no point thereafter did Mr. Robertson discuss with him the advantages and disadvantages of filing an appeal. Following his sentencing, Petitioner was transported to Emanuel County Jail, but Mr. Robertson never met with them there, nor did he have any telephone conversations with Petitioner following his sentencing. Upon learning from another inmate that he had 10 days to file an appeal, Petitioner stated that called his wife approximately two to three days after his sentencing and instructed her to call Mr. Robertson and inform him that he wanted to appeal his sentence. Petitioner testified that he would have cooperated in pursuing an appeal had one been filed on his behalf.

Petitioner's wife, Rosa Aguero, testified that she was present at the time Petitioner was sentenced. After the sentencing, she spoke with Mr. Robertson outside the courtroom in the presence of her brother, sister-in-law, and nephew. She testified that she asked Mr. Robertson whether there was anything else they could do in regard to his sentencing. She testified that Mr. Robertson informed her there was not and that the judge's decision was final; she could not recall whether Mr. Robertson simply informed her that an appeal "would not do any good." She also testified that Mr. Robertson informed her that there was a right to an appeal in state cases but not in federal cases such as Petitioner's. She went on to state that a couple of days after Petitioner's sentencing, Petitioner called her and told her that he

---

[1] On cross-examination, it was revealed that Petitioner received an enhanced sentence for obstruction. However, he also received a reduction in his sentence for acceptance of responsibility.

3

had been told by another inmate that he could file an appeal. During that conversation, Petitioner allegedly told her to call Mr. Robertson, and when she did, she told him that Petitioner wanted to file an appeal. She stated that Mr. Robertson informed her that an appeal was not possible.

Petitioner's sister, Teresa Aguero, testified that she was present at the time of Petitioner's sentencing and for part of the conversation that Petitioner's wife had with Mr. Robertson. When Petitioner's wife asked what they could do next, Teresa Aguero testified that Mr. Robertson stated that there was nothing else that they could do. Mr. Robertson also told Petitioner's wife that there was no appeal allowed in federal cases such as Petitioner's. Her impression from the conversation was that Petitioner was not entitled to an appeal, not that an appeal would be to no avail.

Petitioner's brother-in-law, Mike Marin, testified that he was also present at the time of Petitioner's sentencing and for part of the conversation between Petitioner's wife and Mr. Robertson. Mr. Marin testified that he heard Mr. Robertson tell Petitioner's wife that Petitioner could not appeal because it was a federal case. Again, his impression was that Petitioner was not entitled to an appeal, not that an appeal would be to no avail.

### 2. Government's Response

Following the presentation of Petitioner's case, Mr. Robertson began his testimony by informing the Court that he a member of the bar in the Southern District of Georgia who has been practicing in federal court since approximately 1975. He then testified that as appointed counsel, Petitioner authorized him to negotiate a plea agreement on his behalf. He stated that at the time of Petitioner's sentencing, Judge Bowen informed Petitioner of his

4

right to appeal. Mr. Robertson stated that following the sentencing, he spoke briefly with Petitioner, for approximately a minute to a minute and a half, about his appellate rights. He could not recall what he told Petitioner during that conversation, whether Petitioner instructed him to file an appeal at that time, or what his response to Petitioner was. He also stated that had Petitioner instructed him to file an appeal, his normal practice would have been to make a notation in his file. However, he testified that he did inform Petitioner as to the possibility of an appeal and that he probably would have filed an appeal had Petitioner instructed him to do so. He also stated that he could not recall any other conversations with Petitioner regarding his rights to an appeal and the advantages and disadvantages of an appeal.

Mr. Robertson testified that following Petitioner's sentencing, he had a conversation with Petitioner's wife in the presence of some of Petitioner's family members. He does not recall whether he informed them that Petitioner could receive an enhanced sentence if he appealed, but he testified that he conveyed to Petitioner's family that "they needed to leave it alone." Mr. Robertson also testified that he received two phone calls from Petitioner's wife following the sentencing and does not recall whether she informed him that Petitioner wanted to file an appeal. However, he did state that had there been any instruction to do so, he would have made a notation in Petitioner's file and a review of the file revealed no such notation. Had he received an instruction to file an appeal, Mr. Robertson testified that based on his usual practice, he probably would have done so. However, he could not specifically recall whether he was ever instructed to file an appeal.

## II. DISCUSSION

A. **Petitioner's Instruction to File Appeal**

To establish ineffective assistance of counsel, Petitioner first must show that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). Nonetheless, the Court's scrutiny of counsel's performance must be "highly deferential," and the Court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. In this regard, the Court must determine whether counsel's performance was inside "the wide range of professionally competent assistance," so as "to make the adversarial testing process work in the particular case." Id. at 690

When reviewing counsel's performance, there is a strong presumption that it falls within the "wide range of reasonable professional assistance," and thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [appellate] strategy.'" Id. at 689. Furthermore, strategic decisions are entitled to a "heavy measure of deference." Id. at 691. As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

Under the second prong of Strickland, Petitioner is required to establish prejudice from any deficient performance. Strickland, 466 U.S. at 687. However, the Court is mindful that in the Eleventh Circuit, "an attorney's failure to file an appeal after the

6

defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal."[2] Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*); see also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (explaining that lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a professionally unreasonable manner). Thus, it is not necessary that Petitioner demonstrate any additional prejudice aside from the lost opportunity to appeal. Accordingly, if the Court determines that Mr. Robertson failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.

Petitioner testified that he asked Mr. Robertson to file an appeal following his sentencing and that he asked his wife to call Mr. Robertson on his behalf to inform him that he wanted to file an appeal. Petitioner's wife testified to the same effect and also stated that she asked Mr. Robertson following Petitioner's sentencing whether there was anything that could be done, to which Mr. Robertson allegedly responded that there was not. In his testimony, Mr. Robertson stated repeatedly that he could not recall whether Petitioner had instructed him to file an appeal following his sentencing or whether Petitioner's wife had informed him that Petitioner wished to file an appeal. He could not state with certainty whether he had ever received an instruction to do so.

---

[2]Indeed, "'an attorney's total failure to file an appeal after being instructed to do so will *always* entitle the defendant to an out-of-time appeal, *regardless of the defendant's chances of success.*'" Gray v. United States, 834 F.2d 967, 967 (11th Cir. 1987) (*per curiam*) (quoting Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983)) (emphasis added).

7

Based on the sworn testimony admitted during the evidentiary hearing, the Court has before it the unequivocal statements of Petitioner and his family members that Petitioner asked Mr. Robertson to file an appeal to challenge the sentence imposed in his criminal case. If Petitioner's evidence is to be believed, there were several specific requests made of Mr. Robertson that a sentencing appeal be filed. As noted above, Petitioner testified that he requested that Mr. Robertson file an appeal immediately following his sentencing, and that within two to three days after returning to prison, he called his wife and instructed her to call Mr. Robertson and inform counsel of his wish to file an appeal challenging his sentence. Petitioner's wife testified that immediately following Petitioner's sentencing, she also asked Mr. Robertson if there was anything else that could be done. Consistent with Petitioner's testimony, she also stated that she followed Petitioner's instructions to call Mr. Robertson and informed counsel that Petitioner wanted to file an appeal.

In opposition, the government proffered the testimony of Mr. Robertson, whose statements under oath were equivocal at best. The most persuasive portions of his testimony were his references to his custom and practice of making notations in his files of any requests by his client to file an appeal. Naturally, Petitioner's file reflected no such notation. Aside from his custom and practice, however, Mr. Robertson's testimony concerning the crucial issue of whether Petitioner instructed him to file an appeal was uncertain and equivocal. In balancing the evidence presented by Petitioner and that presented by the government, the Court finds that Petitioner's evidence that he instructed Mr. Robertson to file an appeal is more persuasive. Accordingly, Petitioner's § 2255 motion should be granted so that he may pursue an out-of-time appeal.

## B. Inadequate Consultation with Petitioner

Even if Petitioner did not request that Mr. Robertson file an appeal, the Eleventh Circuit recently held that in such a case, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal.'" Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007) (quoting Flores-Ortega, 528 U.S. at 478). Thus, Petitioner's § 2255 motion should still be granted if the Court finds that Mr. Robertson failed to adequately consult with Petitioner.

"[A]dequate consultation requires informing a client about his right to an appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal."[3] Id. (citing Frazer v. South Carolina, 430 F.3d 696, 711 (4th Cir. 2005)). It is clear that Mr. Roberston did not adequately explain to Petitioner the advantages and disadvantages of filing an appeal. Petitioner conveyed to Mr. Robertson that he was unhappy with his sentence because he felt it was harsher than those imposed on his co-defendants, despite what Petitioner characterized as his better behavior and conduct following his arrest and prior to sentencing. Therefore, he asked Mr. Robertson whether he could file an appeal, to which, Petitioner claims, Mr. Robertson responded that he could not. Furthermore, Petitioner testified that Mr. Robertson never informed him about the advantages and disadvantages of filing an appeal during that conversation, nor did Mr.

---

[3]Because the testimony at the hearing focused on whether counsel adequately advised Petitioner of the advantages and disadvantages of an appeal and because a determination on all the factors is not necessary to determine whether counsel adequately consulted with Petitioner, the Court will limit its discussion to this issue.

9

Robertson meet with Petitioner or have any telephone conversations with him following the imposition of his sentence to discuss the possible implications of filing an appeal.

While it is true that if Petitioner had pursued an appeal, the Eleventh Circuit could have increased his sentence, there is no evidence in the record to suggest that Mr. Robertson informed him of this possibility. While Mr. Robertson may have conveyed to Petitioner's wife following the sentencing that an appeal would be to no avail under the circumstances of Petitioner's case, Petitioner's wife and family members testified that they were not left with this impression, but rather the impression that Petitioner did not have the right to an appeal. Even if this disadvantage was conveyed to his family members, there is no evidence to suggest that counsel informed Petitioner of this possibility. Moreover, "[s]imply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense." Id. at 1207. Rather, a defendant should be provided with enough information to "intelligently and knowingly either assert[] or waive[] his right to an appeal." Id. Without any information regarding the possibility of an unfavorable outcome on appeal, Petitioner could not have intelligently and knowingly waived his right to appeal. Furthermore, even assuming *arguendo* that the information was conveyed to Petitioner, simply informing Petitioner of this possibility would still not qualify as adequate consultation.

Finally, while Mr. Robertson testified that he could not recall the substance of the conversation he had with Petitioner immediately following his sentencing, he was quite sure that it was very brief, lasting only between a minute and a minute and a half. Such a short amount of time was clearly insufficient for Mr. Robertson to adequately consult with

10

Petitioner. See, e.g., id. (finding that an attorney who spoke with his client for "no more than five minutes" following sentencing did not adequately consult with him). In sum, Mr. Robertson's failure to discuss the advantages and disadvantages of an appeal and his very brief conversation with Petitioner clearly demonstrate that counsel failed to adequately consult with Petitioner regarding his appeal.

Once a court determines that counsel did not adequately consult with his client, it must determine, if counsel had an affirmative duty to consult, whether any prejudice inured to the client as a result of counsel's failure to do so. Id. (citing Flores-Ortega, 528 U.S. at 480). In general, counsel has such a duty when either "(1) any rational defendant would want to appeal, or (2) his particular client reasonably demonstrated an interest in appealing." Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005) (citing Flores-Ortega, 528 U.S. at 480). "In making this determination, courts must take into account all information counsel knew or should have known." Flores-Ortega, 528 U.S. at 480. Petitioner testified that he wanted to appeal because his co-defendants received lighter sentences than he did, in spite of his alleged better behavior, which the Court finds to be a rational reaction under Petitioner's circumstances. Furthermore, Petitioner testified that he asked Mr. Robertson to file an appeal, and his wife informed Mr. Robertson that her husband wished to file an appeal. Based on this testimony, the Court finds that Mr. Robertson should have known that his client was interested in appealing his sentence. Thus, under either scenario, Mr. Robertson had an affirmative duty to consult with Petitioner.

Having made this determination, the Court turns its attention to whether counsel's failure to consult resulted in prejudice to Petitioner. Flores-Ortega, 528 U.S. at 481. In order

to establish prejudice where counsel has failed to filed an appeal, Petitioner must show that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. "Because a direct appeal of a federal conviction is a matter of right . . . [a court] determine[s] whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an appeal." Thompson, 504 F.3d at 1207 (citations omitted). Petitioner testified that he was unhappy with his sentence for reasons already discussed. He also stated at the hearing that he would have cooperated in pursuing an appeal had one been filed on his behalf. Furthermore, Petitioner's appeal would have been timely, as Petitioner had ten days from the later of the entry of judgment or order being appeal to file his notice of appeal, Fed. R. App. P. 4(b)(1)(A); Petitioner instructed his wife to inform Mr. Robertson of his desire to appeal only two to three days following the imposition of his sentence. Accordingly, the Court finds Petitioner would have timely appealed his sentence had counsel's performance not been deficient. Thus, Petitioner's § 2255 motion should be granted to pursue an out-of-time appeal on this ground as well.

When a court determines that an out-of-time appeal in a criminal case is the proper remedy in a § 2255 proceeding, the Eleventh Circuit directs that the court proceed as follows:

> (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is ten days, which is dictated by Rule 4(b)(1)(A)(i).

United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000). Accordingly, the Court

recommends that the procedure set forth in Phillips be followed in this case to re-institute Petitioner's right to appeal. Unless Petitioner elects to retain his own counsel for the appeal,[4] the Court recommends that the presiding District Judge appoint counsel prior to the reimposition of his sentence. After the reimposition of Petitioner's sentence, Petitioner, through counsel, will be allowed ten days in which to file a formal notice of appeal.

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **GRANTED**, that the judgment in Petitioner's underlying criminal case be **VACATED**, that an identical sentence be **RE-IMPOSED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Petitioner.

SO REPORTED AND RECOMMENDED this 9th day of December, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4] If Petitioner does choose to retain his own counsel for the appeal, he is **DIRECTED** to file a notice with the Court indicating his intention to retain counsel within the time period allowed for filing objections to this Report and Recommendation. Otherwise, the Court will appoint counsel to represent Petitioner.